**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE and the METROPOLITAN NASHVILLE AIRPORT AUTHORITY,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No.: 3:26-cv-00793** |
| **BILL LEE, in his official capacity as Governor of the State of Tennessee; RANDY McNALLY, in his official capacity as Speaker of the Senate of the State of Tennessee; and CAMERON SEXTON, in his official capacity as Speaker of the House of Representatives of the State of Tennessee,** | ) | **Chief Judge Campbell** |
| **Defendants.** | ) | |

---

**MEMORANDUM IN SUPPORT OF METRO NASHVILLE'S MOTION TO LIFT STAY**

---

## INTRODUCTION

This Court stayed this case pending the resolution of Metro Nashville's petition requesting the U.S. Court of Appeals for the D.C. Circuit to block the Federal Aviation Administration ("FAA") from approving or extending federal recognition to the State-appointed board proposed by the 2026 Tennessee legislation at issue in this case (the "2026 Act"). In its response in the D.C. Circuit, the FAA formally confirmed that it has not approved the State-appointed board. *See* Ex. 1, FAA Response, at 1, 8, 10. The FAA's opposition further acknowledges Section 757 of the 2024 FAA Reauthorization Act ("Section 757") bars the FAA from approving a disputed change during

pending litigation and points to this action as the timely venue for resolving the dispute. *Id.* at 5; *see also id.* at 16 (arguing Metro Nashville's asserted harm "is better addressed in the pending district-court litigation between petitioner and Tennessee"). The D.C. Circuit, in turn, denied Metro Nashville's emergency motion, holding only that it did not satisfy the stringent requirements for an injunction or stay pending review. Order, No. 26-1178 (D.C. Cir. July 27, 2026).

Because the FAA has approved nothing, the only question left for the D.C. Circuit is what obligations Section 757 imposes on the FAA before its approval decision—a question that does not reach, and cannot resolve, whether the State may implement the change at issue here without FAA approval. More important, the FAA's submission confirms the fact dispositive to Metro Nashville's motion for preliminary injunction here: the 2026 Act dictates that the Nashville airports be governed by a State-appointed board that has not been approved by the FAA as required by federal law.

The requirement of FAA approval for airport sponsors and operators is not the creation of the 2024 FAA Reauthorization Act but is mandated by numerous statutes long enforced to maintain the safety and organizational integrity of the nation's airports. This action is the only proceeding that can restore the FAA-approved local leadership and thus ensure Nashville's airports are governed by an approved body while the Section 757 process runs its course. Otherwise, the board that has not received FAA approval and cannot receive it while the case is pending will be left governing the Nashville airports in violation of federal law.

The FAA's submission further demonstrates the flawed premise of the State's defenses in this case. Contrary to State Defendants' claim that Section 757 limits Plaintiffs' remedies to administrative enforcement, the FAA identifies no administrative remedy at all and points instead to this Court. *See* Ex. 1, at 16. Further, the FAA does not credit State Defendants' "entity-level

theory," but rather treats the 2026 Tennessee Act as a "disputed change of airport sponsorship." *Id.* at 14. It acknowledges the 2026 Act creates a governance dispute over "who has the authority to appoint the board," and confirms that the FAA "may not evaluate or approve" any disputed change of airport sponsorship until the resolution of litigation. *Id.* at 1, 4–5. The public interest in having airport operators approved by the FAA, as well as the ongoing, irreparable harms resulting from the unapproved, State-appointed board seizing control of the airport, weigh in favor of lifting the stay and ruling on Plaintiffs' fully briefed Motion for Preliminary Injunction.

## PROCEDURAL BACKGROUND

### A. Procedural History

Plaintiffs commenced this action on June 10, 2026, and simultaneously moved to enjoin State Officer Defendants from implementing the 2026 Act, which purports to vacate the MNAA Board and install a board with a majority of members appointed by state officials. (Dkt. #1.) Because the 2026 Act conflicts with federal law by implementing a "disputed change of airport sponsorship" without FAA approval, Plaintiffs argued that this newly adopted Tennessee law was invalid or unenforceable pursuant to the Supremacy Clause. (Dkt. #3, at 12–14.)

Plaintiffs moved for an expedited briefing schedule to facilitate a ruling before the 2026 Act was scheduled to take effect, leaving the setting of any hearing to the Court's discretion "[t]o the extent the Court believes it will be helpful." (Dkt. # 9); *see also* LR 78.01 (motions "decided by the Court without oral hearings unless otherwise ordered by the Court"). The Court granted that motion on June 15. (Dkt. #17.) The case was reassigned on June 17. (Dkt. #19.) State Defendants responded on June 18. (Dkt. #21.) Plaintiffs replied on June 22, completing briefing. (Dkt. #22.)

No party moved to set a hearing. Instead, on June 30, 2026—the day before the 2026 Act was scheduled to take effect—Plaintiffs moved to ascertain the status of the pending preliminary-

injunction motion in light of the forthcoming July 1, 2026, effective date and to request an expedited decision based on the need to avoid multiplication or complication of the issues to be decided by the Court. (Dkt. #25.) On July 2, 2026, this Court granted Plaintiffs' motion to ascertain status and set the preliminary injunction motion for hearing on August 5, 2026. (Dkt. #26).

On July 1, 2026, a notice was posted on the Nashville International Airport website of a specially called meeting of the putatively reconstituted MNAA board to be held on July 6, 2026. *See* https://flynashville.com/wp-content/uploads/2026/07/Public-Notice-Special-Meeting-July-6-2026.pdf. At that meeting, the State-appointed board purported to adopt an MNAA resolution directing a series of actions under color of the 2026 Act, including withdrawing MNAA's opposition to the 2026 Act, terminating MNAA's participation in this suit, discharging MNAA's counsel of record, seeking dismissal of MNAA's claims, and delivering the resolution—as purported consent to the disputed change of sponsorship—to the FAA. *See* https://flynashville.com/wp-content/uploads/2026/07/01.-Agenda-Special-Meeting-of-BOC-July-6-2026-1.pdf. That same day, counsel retained by the putative board moved to substitute as MNAA's counsel and to dismiss MNAA from this action. (*See* Dkt. #28–30.) Prior to the stay, responses to those motions would have been due on July 20, 2026. LR 7.01(a)(3).

Also, on July 1, 2026, Metro Nashville filed the petition that is the basis of the Order staying this case. On July 8, 2026, the Court stayed this action *sua sponte* pending resolution of Metro Nashville's D.C. Circuit petition and canceled the scheduled August 5, 2026 hearing. (Dkt. #34.) The Court's Order required counsel for Metro Nashville to provide the Court with notice of any rulings by the D.C. Circuit. On July 27, 2026, Metro Nashville provided the Court with notice of three orders entered by the D.C. Circuit. (Dkt. #38.) Metro Nashville has also submitted notice

of a non-substantive scheduling order issued on July 30 in the mandamus proceedings initiated against the FAA by the City of Chattanooga and its airport authority. (Dkt. #39.)

### B. Background related to Metro Nashville's Petition for Judicial Review of Administrative Action by the FAA in the D.C. Circuit.

The D.C. Circuit petition, brought pursuant to 49 U.S.C. § 46110 and the Administrative Procedure Act, named only the FAA and its Administrator, in his official capacity, as respondents. *See* Ex. 2, Metro Nashville Petition (D.C. Cir.). The petition does not name the State Officer Defendants and does not challenge the validity of the 2026 Act. Instead, the petition focuses exclusively on any FAA actions or inaction that would constitute federal recognition and approval. The petition followed a series of communications beginning on May 20, 2026, seeking confirmation that the FAA would not approve the State-appointed board before the Section 757 process and a June 29 request for an administrative stay of any FAA approval or recognition, none of which drew a substantive response.

On July 2, 2026, Metro Nashville moved in the D.C. Circuit for an injunction prohibiting the FAA from recognizing or approving the State-appointed board, or in the alternative a stay pending review. *See* Ex. 3, Emergency Mot. for Injunction Pending Review (D.C. Cir.). That same day, the United States advised the D.C. Circuit that the FAA "confirmed that it will not take steps to recognize any board prior to July 27." Ex. 4, FAA Ltr. to Court (D.C. Cir.). The Court of Appeals ordered the FAA to respond by July 13, 2026, with any reply due July 20, 2026—seven days before that assurance expired.

The FAA's response, filed on July 13, 2026, confirms that it had not approved and had no plans to approve the State-appointed board. Ex. 1. That confirmation was the primary basis for its

opposition. The FAA represented that it "has refrained from weighing in on that dispute" and "has neither taken a position on the governance of the Airport Authority nor acted." *Id.* at 1, 8.[1]

The D.C. Circuit granted the State of Tennessee's unopposed motion to intervene on July 15, 2026. (Dkt. #38, Ex. A.) As intervenor, the State opposed Metro's motion on the same two grounds it presses here: that Section 757 "does not apply" because MNAA remains the named sponsor and no sponsorship was transferred "from one 'entity' to another," and that any remedy lies exclusively through the administrative complaint procedures of 14 C.F.R. Part 16. *See* Ex. 5, State Resp. (D.C. Cir.), at 24–25. For its part, the FAA did not advance or endorse either theory. Nor did the FAA dispute that its approval of "any disputed change of airport sponsorship" would require the FAA "to evaluate whether the relevant statutory framework had been satisfied, what documentation supported that conclusion, and whether any other potential considerations affected the agency's conclusion," Ex. 1 at 14, in the exercise of its "prerogative to consider the law and facts and issue a reasoned decision in the first instance," *id*. at 17—an evaluation it represented had not begun.

The FAA argued that an order against it "would not resolve the dispute between the two competing boards" and thus "would not prevent the 'chaos' that petitioner claims is its injury." Ex. 1 at 16. The FAA continued:

---

[1] The FAA's opposition rested throughout on the premise that it had not acted. *See* Ex. 1 at 2 (petitioner seeks "to restrain wholly hypothetical action that FAA has not yet taken and may never take"); *id*. at 10 (motion "seeks to enjoin action that the agency has not taken and that the agency has not indicated it will take," and "FAA has not acted to approve or disapprove a change in governance"); *id*. at 12 ("There is no indication that FAA has completed its decisionmaking process," and the asserted injury "would have been determined by FAA action that has not yet occurred"); *id*. at 13 (petitioner "seeks to enjoin FAA from actions that have not yet occurred" and is "not presently injured by a hypothetical, future decision"); *id*. at 14 ("Because FAA has made no decision and taken no action, the Court has no agency reasoning to review"); *id*. at 15 (anticipated FAA action "is only theoretical at this point").

> To the extent petitioner fears harm from the state-appointed board creating questions about who has authority over the Airport Authority, *that alleged harm is better addressed in the pending district-court litigation between petitioner and Tennessee.* Indeed, petitioner has already moved for a preliminary injunction against the State in that case, . . . and neither the district court's delay in acting on that motion nor its deference to this Court by *sua sponte* staying district-court proceedings can justify this Court issuing a preliminary injunction against FAA that would not remedy the asserted harm.

Ex. 1 at 16–17 (emphasis added).

On July 27, 2026, the D.C. Circuit denied Metro Nashville's emergency motion, holding only that Metro "has not satisfied the stringent requirements for an injunction or stay pending court review." Order, No. 26-1178 (D.C. Cir. July 27, 2026) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009) and *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)). (Dkt. #38, Ex. B.) That order resolved only the request for interim relief; it stated no reasons beyond the governing interim-relief standard and reached no merits question. Metro Nashville's petition remains pending. (Dkt. #38, Ex. C.) The Chattanooga mandamus proceeding is similarly focused on FAA federal recognition, and because the FAA has neither evaluated nor approved the changes proposed in the 2026 Act, that proceeding will also address the agency's responsibilities prior to a decision. (*See* Dkt. #39.) Neither proceeding can reach the validity of the 2026 Act or adjudicate whether State Officer Defendants may implement its changes—the questions presented here.

## LEGAL STANDARD

The authority to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Clinton v. Jones*, 520 U.S. 681, 706 (1997). In deciding whether to stay an action pending a related proceeding, courts in this Circuit weigh (1) the potentiality of the other case having a dispositive effect on the case to be stayed, (2) the judicial economy to be saved by awaiting a dispositive

decision, (3) the public welfare, and (4) the hardship or prejudice to the party opposing the stay, given its duration. *E.g.*, *Latta v. U.S. Dep't of Educ.*, 653 F. Supp. 3d 435, 439 (S.D. Ohio 2023); *Costello v. Mountain Laurel Assurance Co.,* No. 2:22-CV-35-TAV-CRW, 2024 WL 4115979, at *2 (E.D. Tenn. Sept. 5, 2024).

"[I]t is also clear that a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Env't Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.,* 565 F.2d 393, 396 (6th Cir. 1977). When a district court exercises its discretion to stay a case pending the resolution of related proceedings in another forum, the stay must not be immoderate but properly limited in scope and duration. *See Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000); *Landis*, 299 U.S. at 257 ("The stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description."). Where the original justification for staying a case pending a related proceeding is grounded in judicial economy, the stay should be revisited where developments demonstrate that the other proceeding will not resolve or simplify the issues in the stayed case. *Pro Stage Gear, LLC v. Guangzhou Rantion Trading Co.*, No. 1:17-CV-00030-DCLC, 2019 WL 10960473, at *2 (E.D. Tenn. Nov. 19, 2019) ("A district court may lift a stay 'if the circumstances that persuaded the court to impose the stay in the first place have changed significantly.'") (quoting *Pers. Audio LLC v. Google, Inc.*, 230 F. Supp. 3d 623, 626 (E.D. Tex. 2017)).

## ARGUMENT

### I. The D.C. Circuit Petition Cannot Have a Dispositive Effect on This Case.

The stay rests on the premise that resolution of Metro's D.C. Circuit petition will dispose of, or materially advance, this action. It will not. The petition is a proceeding against the FAA and

its Administrator under 49 U.S.C. § 46110 and the Administrative Procedures Act; it seeks to compel the agency to perform a statutory duty. This case is an action against the State Officer Defendants under *Ex parte Young*, 209 U.S. 123 (1908) and Section 757, which seeks to compel State Officer Defendants' compliance with the statute's requirements or to invalidate the 2026 Act provisions that conflict with Section 757 pursuant to the Supremacy Clause of the United States Constitution. The FAA is not a party here, and the State Officer Defendants are not parties there. The course of conduct required by the FAA *before* any approval or disapproval of the disputed change of sponsorship has no bearing on whether the State may unilaterally implement the 2026 Act's governance changes without FAA approval. That question remains for this Court.

Where, as here, the related proceeding cannot resolve the issues in the stayed case, a stay "does not conserve judicial resources or aid in comprehensive disposition of the litigation." *Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.,* 743 F.2d 1519, 1525 (11th Cir. 1984); *see also id.* (finding "[w]ise judicial administration" does not support a stay that "only postpones the district court's inevitable consideration of the claim").

The two proceedings have different jurisdictional bases and turn on distinct questions. The petition involves judicial review of agency action, which is appealed directly from the agency to the D.C. Circuit pursuant to 49 U.S.C. § 46110, whereas an action seeking injunctive relief against a State Officer's violation of federal law must be initiated in a trial court pursuant to 28 U.S.C. § 1331. The D.C. Circuit proceeding requires determining whether a federal agency's actions or inaction comports with federal law and cannot reach the federal statute's effect on state action.

At the time of this Court's stay, there was a possibility the FAA could have confirmed and defended its approval of the State-appointed board. Had it done so, a D.C. Circuit judgment upholding that approval would have effectively mooted this action, which is premised on the

State's implementation of a disputed change without the FAA approval required by federal law. The FAA's actual filing does the opposite: it defends no approval, disclaims any intent to approve, and acknowledges the statutory prerequisites for approval. The D.C. Circuit's review is therefore limited to the FAA's federal recognition obligations in light of the agency's non-approval of the disputed change. That proceeding cannot now reach a conclusion that would resolve this case or result in inconsistent judgments. The propriety of a stay is dependent upon the circumstances of the case and must account for changes in the applicable circumstances, such as the narrowing of the scope of review in the D.C. Circuit based on FAA's confirmation that there has been no approval of the State-appointed board. *See Pro Stage Gear, LLC*, 2019 WL 10960473, at *2–5 (lifting a stay after finding the circumstances underlying the stay had changed); *Ind. State Police Pension Tr. v. Chrysler LLC,* 556 U.S. 960, 961 (2009) ("The propriety of a stay is dependent upon the circumstances of the particular case, and the traditional stay factors contemplate individualized judgments in each case.") (citation modified); *cf. In re Jackson Masonry, LLC,* 906 F.3d 494, 502 (6th Cir. 2018) (noting "that changing circumstances could change the stay calculus").

## II. Maintaining the Stay Will Not Advance Judicial Economy.

Because the FAA has now confirmed that it has not approved the State-appointed board, the D.C. Circuit proceeding will neither resolve nor simplify the issues in this case. Whatever judicial economy the stay promised has proved illusory now that the FAA has confirmed the fact dispositive here. It cannot be seriously contended that a person may lawfully take control of a federally obligated airport without FAA approval, and the FAA has now confirmed that State Defendants have received no such approval. The FAA's confirmation dispels the inference the State would have had this Court draw from the agency's silence. (Dkt. #21 at 14 ("As of this filing date, the FAA has given no indication that it agrees with Metro and MNAA that the 2026 Act

effects a change in sponsorship, nor has it expressed any opposition to or concern about the 2026 Act.”).) Whatever force that observation had in June, the FAA has now spoken, and its silence cannot be read as acquiescence in or tacit acceptance of the State’s proposed change of airport governance. The FAA represents only that it has “made no decision” and has “refrained from weighing in.” Ex. 1 at 14, 1. It has not undertaken the legally requisite evaluation necessary to confirm that the State-appointed board can operate the airport safely and can assume the airport’s grant assurances and other federal obligations.

The D.C. Circuit denied interim relief following FAA’s representations that it has approved nothing and can take no action while the litigation is pending—leaving the disputed change unapproved and requiring this Court to determine whether the State may implement the disputed change of governance without FAA approval. Had the D.C. Circuit instead granted Metro Nashville’s motion and directed the FAA to withhold approval, the posture of this action would be identical. The disputed change of airport sponsorship would still stand unapproved, leaving this Court to determine whether the State may implement a change not approved by the FAA. *See Hammond v. Floor & Decor Outlets of Am., Inc.*, No. 3:19-cv-01099, 2020 WL 6712168, at *3 (M.D. Tenn. Nov. 16, 2020) (declining to stay pending a Sixth Circuit appeal because the case could proceed regardless of the appeal's outcome, such that "[j]udicial economy would not necessarily be furthered by a stay").

Further proceedings in the D.C. Circuit raise no prospect of simplifying the issues here, because that proceeding is now narrowed to what administrative obligations are imposed on the FAA while the Section 757 process runs its course. If the D.C. Circuit were to ultimately rule for Metro Nashville by requiring the State to submit an application to implement its proposed changes in airport governance, that application could not be reviewed and approved until this case is

resolved. Conversely, if FAA were to prevail and Metro Nashville's petition were dismissed because there is no FAA decision to review, the FAA would still be precluded from reaching a final agency decision until this action is resolved.

The FAA's confirmation that it has made no approval renders this Court's stay a closed circle: this Court is stayed in deference to the D.C. Circuit while the FAA foregoes action out of deference to this Court under Section 757, stating that any dispute "is better addressed in the pending district-court litigation." Ex. 1 (FAA Resp.) at 16. Because approval of a disputed change of airport sponsorship must be deferred until the conclusion of pending litigation including this case, this action must necessarily be resolved *before* any judicial review of FAA approval can commence. Accordingly, the stay of this action can now only operate to delay FAA approval or disapproval—and ultimately any judicial review of the FAA's decision by the D.C. Circuit. A stay is justified only where it conserves judicial resources without working undue prejudice. Neither condition now holds.

## III. The Public Interest Weighs Against Continuing the Stay.

The public interest is not served by leaving an unapproved board in control of a federally obligated airport. The FAA has immense obligations to ensure the safety of airports and air travel, and its approval of airports is essential to that public trust. FAA approval of airports was mandated by federal law long before the 2024 adoption of Section 757. As the FAA's own guidance recognizes, the agency has a continuing "statutory obligation to ensure that an airport sponsor . . . is capable of assuming all grant assurances and other federal obligations" and "is legally and financially able to . . . operate the airport . . . in a safe manner." *See* FAA Compliance Guidance Letter 2021-1, at 1–2 & n.2 (July 28, 2021) (citing 49 U.S.C. §§ 40101, 40113, 40114, 46101, 46104, 46105, 46106, 46110, 47105(d), 47106(d), 47107(k), 47107(l), 47111(d), 47122).

Federal policy recognizes that maintaining stability during a contested change is important to safety. *See* Notice of Policy on Evaluating Disputed Changes of Sponsorship at Federally Obligated Airports, 81 Fed. Reg. 36144, 36144 n.2 (June 6, 2016) ("Consent from the current sponsor/operator before a change of sponsorship or operational authority is a critical factor for the FAA in determining whether safety, efficiency, and compliance with grant assurances as required by Federal law will be fully satisfied prior to, during, and after any transition period between sponsors/operators."). It is the public's interest in safety and compliance with federal law that necessitates the structured process for disputed changes in airport governance and operations.

"The public interest lies in the correct application of the federal constitutional and statutory provisions upon which the claimants have brought this claim." *Coal. to Def. Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006) (citation modified); *Little v. City of Saginaw,* 678 F. Supp. 3d 936, 940 (E.D. Mich. 2023). Here, the FAA's submission not only confirms the dispositive fact in support of Plaintiffs' claim that the 2026 Act implements a disputed change of airport sponsorship without FAA approval but also refutes the State's chief defenses.

While the State Defendants insist any remedy for Metro Nashville under Section 757 lies through administrative enforcement with the FAA, the FAA identifies no administrative remedy at all. Its brief does not mention 14 C.F.R. Part 16, and consistent with the text of Section 757, points to this Court as the proper venue for Metro Nashville's claim. Similarly, the FAA did not adopt the State's theory that Section 757 applies only if the State creates a new entity rather than reconstituting the existing airport authority. It describes the dispute as one over "who has the authority to appoint the board," and recites without qualification Section 757's definition of a "disputed change of airport sponsorship," which includes "any action that seeks to change the ownership, sponsorship, or governance of, or operational responsibility for, a federally obligated,

publicly owned airport." Ex. 1, at 1, 4–5, 14, 17. The agency the State acknowledges as the "sole legal authority" on approval made clear that any approval would require the FAA to "evaluate whether the relevant statutory framework had been satisfied, what documentation supported that conclusion, and whether any other potential considerations affected the agency's conclusion." Ex. 1 at 14. By the FAA's own account, however, it has "made no decision and taken no action." *Id.*

No FAA approval is forthcoming while this action is pending. Under Section 757(b)(2), the FAA "may not evaluate or approve a disputed change of airport sponsorship where a legal dispute is pending before a court of competent jurisdiction." *Id.* at 5 (quoting Section 757(b)(2)). The fundamental structure of Section 757 provides for courts to address "disputed changes of airport sponsorship" including governance disputes turning on state law *before* the FAA addresses those issues reserved for the FAA.

That statutory sequence is reason to lift the stay, not maintain it. Section 757 assigns the resolution of a disputed change—including the questions this case presents—to the courts first, and bars the FAA from acting until that resolution is complete. A stay that holds this action in abeyance to await the FAA therefore inverts the order of decision Congress prescribed and delays the judicial resolution Congress made a precondition to FAA action.

The public's interest in avoiding the instability and uncertainty of attempted state takeovers of longtime locally sponsored airports is most plainly demonstrated in the adoption of Section 757 itself. Congress adopted Section 757 against a documented history of state efforts to seize control of locally governed airports and strengthened its text before passage to prohibit FAA approval before all litigation was resolved.[2] The statute responded to that record of attempted takeovers—

[2] The amendment that led to the adoption of Section 757 was sponsored by a Georgia senator in response to an attempted take over the Hartsfield-Jackson Atlanta International Airport, and the protections of locally owned and operated airports were strengthened during the legislative

of which Tennessee's 2023 effort was among the most recent—through language designed to preserve the status quo until the resolution of both litigation and an independent review by the FAA. A stay that would safeguard the disputed change before the resolution of either is contrary to the public interest served by the statute.

Moreover, the public interest cannot be advanced by the circumvention of a statute lawfully enacted by Congress. Some States adopting similar takeovers have acknowledged the legal requisite of FAA approval and provided for their legislated changes to be "effective only upon the FAA's approval of the new authority as an eligible airport sponsor." *E.g.,* Miss. Code § 61-3-6. The application of Section 757 should not be more onerous for states seeking to comply with federal law rather than avoid it. Moreover, it would strain public trust if Section 757, which was adopted just two years ago for the express purpose of guarding against ill-conceived state takeovers, nonetheless provides a pathway to bypass FAA approval and achieve the same outcome.[3]

---

process. *See* FAA Reauthorization Act of 2023, S. 1939, 118th Cong., Warnock Amendment 1 (ERN23581 / R.04DWS), Senate Committee on Commerce, Science, and Transportation (Executive Session Markup, Feb. 8, 2024), https://www.commerce.senate.gov/wp-content/uploads/media/doc/Warnock_1.pdf; S. Amdt. 1912 to H.R. 3935, 118th Cong., 170 Cong. Rec. S3381–3495 (daily ed. May 7, 2024) (amendment in the nature of a substitute including text of Section 757 as enacted), https://www.congress.gov/amendment/118th-congress/senate-amendment/1912?s=a&r=154. *See generally* Kelly Yamanouchi, *FAA Law Includes Provision to Prevent State Takeover of ATL*, The Atlanta Journal-Constitution (May 23, 2024), https://www.aviationpros.com/airport-business/airport-infrastructure-operations/news/55042049/faa-law-includes-provision-to-prevent-state-takeover-of-atl.

[3] Here, Section 757 was drafted against the backdrop of two recent attempts to change local airport governance while insisting there was no change in the entity serving as the sponsor and operator. North Carolina made such an attempt in 2013–14. *See* N.C. Sess. Law 2014-10, § 11(b) (stating that "[n]othing in this Article is intended to transfer the Airport" and that the city would "continue to serve as sponsor"). A state court, however, rejected this attempt nearly a decade before Section 757 was adopted. *City of Charlotte v. North Carolina*, No. 13-CRS-12678 (N.C. Super. Ct. Mecklenburg Cty. Oct. 13, 2014) (enjoining legislation transferring control of airport without FAA approval as preempted by federal airport law) (Dkt. #22, Ex. 1). Moreover, Tennessee itself

A construction of Section 757 that permits States to implement a change without FAA approval, to stay FAA approval during pending litigation, and to stay pending litigation in favor of any ongoing administrative process would supply a blueprint for eliminating the precise protections Congress provided. The public's interest in compliance with the Constitution and federal statutes and in airports governed by entities approved by the FAA as capable of safe, lawful operation of airports weigh in favor of lifting the stay.

## IV. The Continuing Harm from Maintaining the Stay Requires That It Be Lifted Now.

The harm anticipated in Metro Nashville's previously filed preliminary injunction papers is no longer prospective; it is occurring, it is reflected in the record, and it is escalating. The Court should rule now rather than permit it to compound during an open-ended stay. First, the records of the putative board's July 6 meeting do not demonstrate governance in the ordinary course, but reflect an effort to frustrate the review and approval required by federal law. *See* Agenda (July 6, 2026), *at* https://flynashville.com/wp-content/uploads/2026/07/01.-Agenda-Special-Meeting-of-BOC-July-6-2026-1.pdf. Within days of purporting to take office, the putative board convened, elected leadership, resolved to withdraw MNAA's opposition and delivered a purported consent to the FAA,[4] and directed the substitution of counsel and dismissal of this suit. (Dkt. #28–30.)

Second, the composition of the putative board is itself unsettled in a way that illustrates the disorder. One appointee is not only appointed by state officials but is simultaneously a top state

---

attempted this same maneuver of taking control of the entity rather than the airport in 2023—a dispute still ongoing when Congress adopted Section 757. It strains credulity to suggest that the statute adopted to guard against state takeovers ignored two of the most prominent and contentious examples.

[4] Section 757(d) measures consent at the inception of the dispute—"where the airport sponsor of record *initially* does not consent"—so a consent manufactured after the dispute arose cannot remove the change from the statute's reach.

official himself: the Deputy Governor of Tennessee, Stuart McWhorter, who simultaneously serves as Commissioner of the Tennessee Department of Economic and Community Development. *See* MNAA Press Release (July 1, 2026) *at* https://flynashville.com/news/press-releases/mnaa-welcomes-newly-appointed-board-of-commissioners. It is unclear whether he is appointed to serve in his personal capacity or in either of those official capacities. That ambiguity raises unresolved questions about the board's lawful composition and independence not yet considered by the FAA.

Third, the governance conflict is now concrete and imminent, not hypothetical. The putative board conducted a business meeting on July 15, 2026, and the agenda and board packet for that meeting demonstrate that the State-appointed board is taking actions involving the expenditure of federally obligated funds, entering into long-term, multi-million-dollar contracts, and entering into lease agreements related to property that belongs to MNAA, which remains an agency of Metro Nashville. The result is exactly the dual-governance conflict the injunction was sought to prevent, along with attendant expense, distraction, and uncertainty for MNAA, its personnel, and those who deal with it.

Fourth, and most seriously, an unapproved board is taking action now, and the consequences worsen with each passing week. A board that the FAA has not approved and cannot presently approve is purporting to exercise the authority of the airport sponsor and operator as though it had received the FAA approval required by law. As it moves from organizational steps into contracting, personnel, and potentially emergency-management decisions, the actions it takes in the absence of FAA approval will be difficult or impossible to unwind, and will expose MNAA to conflicting obligations, questions of validity, and risk to its federal grant eligibility under 49 U.S.C. § 47107. That danger is heightened by the state-appointed board's posture of aggressively asserting control rather than preserving stability until the pending disputes are resolved. The loss

of Section 757's pre-approval protection is precisely the injury the statute was enacted to prevent, and it cannot be remedied after the fact.

The preliminary injunction that would prevent this harm has been fully briefed since June 22 (Dkt. #22). In these circumstances—where the disputed change has not been approved by the FAA, is being implemented under color of the state law, and where a prolonged stay would leave that change in effect without federal approval—continuing the stay would operate as the effective denial of that motion. *Cf. United States v. Bayshore Assocs., Inc.,* 934 F.2d 1391, 1395 (6th Cir. 1991); *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83–84 (1981). Federal law requires the timely relief Plaintiffs seek.

**CONCLUSION**

Metro Nashville respectfully requests the Court lift the stay entered July 8, 2026 (Dkt. #34) and grant the motion for a preliminary injunction prohibiting the State Officer Defendants from implementing the 2026 Act until the disputed change has been approved by the FAA as Section 757 requires. In the alternative, Metro Nashville requests the Court lift the stay and rule on the pending motion for preliminary injunction or, if the Court prefers not to reach the merits on the present record, lift the stay and reset the hearing on Plaintiffs' request for preliminary relief.

Respectfully submitted,

DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
TYLER CHANCE YARBRO (#023553)
DIRECTOR OF LAW

*/s/ Tyler Chance Yarbro*
Metropolitan Courthouse, Suite 108
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341
tyler.yarbro@nashville.gov

*/s/ Jeffrey P. Yarbro*
BASS, BERRY & SIMS, PLC
ROBERT E. COOPER, JR. (#010934)
JEFFREY P. YARBRO (#024207)
WESLEY S. LOVE (#036860)
21 Platform Way South, Suite 3500
Nashville, Tennessee 37203
(615) 742-6200
bob.cooper@bassberry.com
jyarbro@bassberry.com
wesley.love@bassberry.com

*Counsel for Metro Nashville*

## CERTIFICATE OF SERVICE

I certify that on July 31, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, which includes:

Phillip F. Cramer
W. Campbell Haynes
SPERLING KENNY NACHWALTER LLC
1221 Broadway, Suite 2140
Nashville, Tennessee 37203
pcramer@sperlingkenny.com
chaynes@sperlingkenny.com

*Counsel of Record for MNAA*

Tyler S. Sanders
Laurel K. Hall
Office of the Tennessee Attorney General
Financial Division
P.O. Box 20207
Nashville, TN 37202
tyler.sanders@ag.tn.gov
laurel.hall@ag.tn.gov

*Counsel for State Officer Defendants*

George H. Cate III
James L. Murphy III
Timothy A. Rodriguez
Bradley Arant Boult Cummings, LLP
1221 Broadway, Suite 2400
Nashville, TN 37203
gcate@bradley.com
jmurphy@bradley.com
trodriguez@bradley.com

*Counsel for Movants in Motion to Substitute*

*/s/ Wesley S. Love*