# EXHIBIT 1

**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 26-1178**

## IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE,

Petitioner,

v.

FEDERAL AVIATION ADMINISTRATION and BRYAN BEDFORD, as Administrator of the FAA, in his official capacity,

Respondents.

On Petition for Review of Agency Action

## RESPONSE TO PETITIONER'S EMERGENCY MOTION FOR INJUNCTION PENDING REVIEW

*Of Counsel:*

GREGORY ZERZAN
*General Counsel*

CHARLES E. ENLOE
*Assistant General Counsel*

WILLIAM McKENNA
*Chief Counsel*

KRYSTYNA BEDNARCZYK
*Assistant Chief Counsel, Federal Aviation Administration*

*Department of Transportation*

BRETT A. SHUMATE
*Assistant Attorney General*

DANIEL AGUILAR
STEVEN A. MYERS
JOSHUA M. KOPPEL
*Attorneys, Appellate Staff*
*Civil Division, Room 7212*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4820*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.    Parties and Amici

Petitioner is the Metropolitan Government of Nashville and Davidson County, Tennessee.  Respondents are the Federal Aviation Administration and Bryan Bedford, Administrator of the FAA, in his official capacity.  No other parties, intervenors, or amici curiae have entered appearances in this Court.

### B.    Rulings Under Review

The petition for review challenges respondent FAA's alleged failure to act.

### C.    Related Cases

This case has not previously been before this Court or any other court.  *In re Chattanooga Metropolitan Airport Authority*, No. 26-1166 (D.C. Cir.), involves different petitioners but raises a similar issue. Although it is not a related case within the meaning of Circuit Rule

28(a)(1)(C), *Metropolitan Government of Nashville & Davidson County*

*v. Lee*, No. 3:26-cv-793 (M.D. Tenn.), involves a related issue.


                                        /s/ Joshua M. Koppel
                                        Joshua M. Koppel

ii

# TABLE OF CONTENTS

**Page**

GLOSSARY

INTRODUCTION ..................................................................................1

STATEMENT........................................................................................3

      A.    Statutory Background.............................................................3

      B.    Factual And Procedural Background......................................6

ARGUMENT........................................................................................9

I.     PETITIONER IS NOT ENTITLED TO THE REQUESTED PRELIMINARY RELIEF BECAUSE IT CANNOT SHOW THAT ADVERSE FAA ACTION HAS OCCURRED OR IS IMMINENT .................10

II.    PETITIONER CANNOT DEMONSTRATE IRREPARABLE HARM WARRANTING RELIEF ........................................................14

III   THE BALANCE OF EQUITIES AND PUBLIC INTEREST WEIGH AGAINST AN INJUNCTION .................................................17

CONCLUSION ...................................................................................18

CERTIFICATE OF COMPLIANCE

iii

# GLOSSARY

| | |
|---|---|
| FAA | Federal Aviation Administration |
| Nashville | Metropolitan Government of Nashville and Davidson County |
| Airport Authority | Metropolitan Nashville Airport Authority |

## INTRODUCTION

This case arises from a dispute between the Metropolitan Government of Nashville and Davidson County (Nashville) and the State of Tennessee over who has the authority to appoint the board of the Metropolitan Nashville Airport Authority (Airport Authority), which oversees Nashville International Airport and John C. Tune Airport. The Federal Aviation Administration (FAA) has refrained from weighing in on that dispute.

Nashville filed a petition for review in this Court alleging that FAA has an eventual statutory obligation to determine the governance of the Airport Authority, that FAA is prohibited from determining that governance at the present time because of ongoing litigation in the U.S. District Court for the Middle District of Tennessee, and that FAA therefore has a present duty to issue a statement saying that it will not approve of or accept a transfer of governance of the Airport Authority at least until the district-court litigation is concluded. Shortly after filing the petition for review, Nashville moved for an emergency injunction seeking to prohibit FAA from recognizing the state-appointed board of the Airport Authority. That motion challenges the possibility that FAA

might take a future action that would favor Tennessee, and seeks an injunction pending appeal to prohibit that possibility. The motion is thus fundamentally different from Nashville's petition for review, which seeks to challenge FAA's *inaction* and seeks to compel a statement in Nashville's favor.

Whatever the merits of the petition for review challenging alleged agency inaction, Nashville is not entitled to the extraordinary remedy of an injunction to restrain wholly hypothetical action that FAA has not yet taken and may never take. Whether that defect is best described as a lack of standing, final agency action, or ripeness, the ultimate conclusion is the same: Nashville is not entitled to an injunction to restrain agency action that has not occurred and that it has failed to demonstrate is likely to imminently occur. *See Industrial Energy Consumers of Am. v. FERC*, 125 F.4th 1156, 1161 (D.C. Cir. 2025) (dismissing petition because "[n]o petitioner has demonstrated imminent injury from the" challenged agency action).

Petitioner also cannot demonstrate irreparable harm from a hypothetical future agency action. There is no basis for the Court to interpose itself in FAA's decisionmaking before the agency has reached

2

any decision, taken any action, or explained the basis for any possible action.  The motion for an injunction pending review should be denied.

## STATEMENT

### A.    Statutory Background

The Federal Aviation Administration is charged with "encourag[ing] the development of civil aeronautics and safety of air commerce" in the United States.  49 U.S.C. § 40104(a).  To further that mission, Congress has given FAA authority to grant money to maintain a safe and efficient system of public-use airports.  *Id.* § 47104(a); *see* 49 C.F.R. § 1.83(a) (delegating authority of the Secretary of Transportation to FAA).  Such grants can be issued to fund airport development activities such as "constructing, repairing, or improving" an airport, acquiring or installing equipment, or acquiring land for future airport development.  49 U.S.C. § 47102(3).  FAA may approve a grant only if, *inter alia*, the "sponsor"—that is, the public agency or private owner of an airport that submits the grant application, *id.* § 47102(26)—"has authority to carry out the project as proposed."  *Id.* § 47106(a)(5).

FAA may approve a project grant only upon receipt of certain written assurances.  49 U.S.C. § 47107.  One of the assurances that

3

FAA requires is that a sponsor "will not take or permit any action which would operate to deprive it of any of the rights and powers necessary to perform" any of the terms and conditions of the grant agreement "without the written approval of the Secretary." FAA, *Assurances: Airport Sponsors* 6 (Apr. 2025), https://perma.cc/CK9E-W8TS. When a sponsor proposes transferring responsibility for an airport to a new sponsor, FAA conducts a review to ensure that the proposed sponsor can assume all grant assurances and other federal obligations before it permits the transfer. *See* FAA, Order 5190.6C, *Airport Compliance Manual*, § 6.7, at 6-8 to 6-16 (Feb. 20, 2026), https://perma.cc/K72S-T57J; FAA, Memorandum from Kevin C. Willis to Regional Directors & Regional Compliance Specialists (July 28, 2021), https://perma.cc/2RP3-LUB8; FAA, Order 5100.38D, Change 1, § 2-9, at 2-20 to 2-11 (Feb. 26, 2019), https://perma.cc/SXB9-WUQA.

In the FAA Reauthorization Act of 2024, Congress provided for cases in which there is "a disputed change of airport sponsorship." Pub. L. No. 118-63, tit. VII, subtitle A, § 757, 138 Stat. 1025, 1285-1287. In such a case, the FAA Administrator "shall have the sole legal authority to approve any change in the sponsorship of, or operational

4

responsibility for, the airport." *Id.* § 757(a)(1), 138 Stat. at 1285. The Administrator "shall not approve any disputed change" of sponsorship "unless the Administrator receives—(A) written documentation from the airport sponsor of record consenting to the change … ; (B) notice of a final, non-reviewable judicial decision requiring such change; or (C) notice of a legally-binding agreement between the parties involved." *Id.* § 757(b)(1), 138 Stat. at 1286. In addition, the Administrator "shall independently determine whether the proposed sponsor or operator is able to satisfy Federal requirements for airport sponsorship or operation" and may impose such "terms and conditions" as the Administrator determines necessary to ensure that any change in airport sponsorship "is consistent with existing Federal law, regulations, existing grant assurances, and Federal land conveyance obligations." *Id.* § 757(c), 138 Stat. at 1286. However, Congress provided that the Administrator "may not evaluate or approve a disputed change of airport sponsorship where a legal dispute is pending before a court of competent jurisdiction." *Id.* § 757(b)(2), 138 Stat. at 1286.

5

## B.    Factual And Procedural Background

1.  Nashville, Tennessee, is served by two primary airports: Nashville International Airport and John C. Tune Airport.  Both airports are owned and sponsored by the Metropolitan Nashville Airport Authority.

In May 2026, Tennessee enacted a law that, effective July 1, "vacated and reconstituted" the board of commissioners of certain airport authorities and provided for state officials to appoint a majority of the commissioners of such boards.  2026 Tenn. Pub. Ch. 978, §§ 1, 2, 7.  The day after the law's enactment, petitioner Nashville sent FAA a letter asserting that the state law would change "both governance and ownership of the" Airport Authority, whose board of commissioners had previously been appointed by Nashville officials.  Pet. Ex. 1, at 1-2. Nashville stated that it disputed the change of governance and ownership and requested that FAA notify the Chairman of the Airport Authority's Board of Commissioners that it would not recognize the change until the conditions set out in Section 757(b)(1) are satisfied.  *Id.* at 2-3.

6

In June 2026, Nashville and the Airport Authority sued Tennessee officials over this dispute. Complaint, *Metropolitan Government of Nashville & Davidson County v. Lee*, No. 3:26-cv-793 (M.D. Tenn. June 10, 2026), Dkt. No. 1. The plaintiffs also moved for a preliminary injunction to prevent Tennessee from vacating or reconstituting the Airport Authority's board of commissioners until "the parties come to a legally binding agreement" or "until the FAA Administrator has approved any proposed governance change" pursuant to Section 757. Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction at 25, *Lee*, No. 3:26-cv-793 (June 10, 2026), Dkt. No. 3. That suit has been stayed pending resolution of the petition for review here. Order, *Lee*, No. 3:26-cv-793 (July 8, 2026), Dkt. No. 34.

In late June, Nashville sent FAA another letter "demand[ing]" that FAA "[c]onfirm in writing that the Tennessee legislation constitutes a 'disputed change of airport sponsorship' under Section 757(d)" and "[c]onfirm that no change in governance of the Airport sponsor may take effect" until the statutory conditions in Section 757(b)(1) are satisfied. Pet. Ex. 2, at 7. On June 30, Nashville filed a motion with FAA "to stay any action that FAA might otherwise

7

undertake to approve, recognize, or otherwise permit" the transfer of governance to the State's newly appointed board of commissioners.  Pet. Ex. 3, at 1.  To date, FAA has neither taken a position on the governance of the Airport Authority nor acted on Nashville's administrative motion.

2.  Nashville filed the petition for review here on July 1, 2026. The petition alleges that "Section 757 imposes a mandatory duty on the FAA to state that it will not approve … a transfer [of governance]" for the Nashville airports until litigation in the Middle District of Tennessee concludes.  Pet. 1.  Petitioner asserts that "FAA has failed to issue the required statement and has effectively permitted the State of Tennessee to proceed toward assuming governance of the Airports," *id.*, and it seeks an order "[c]ompel[ling] the FAA to issue a statement that it will not approve of or accept the State of Tennessee's transfer of governance of the [Airport Authority] at least until the [Middle] District of Tennessee litigation is concluded," Pet. 11.

On July 2, petitioner moved for an emergency injunction to "[p]rohibit the FAA from recognizing or approving the State-appointed competing Board of Commissioners" of the Airport Authority.  Mot. 20;

8

*see also* Mot. 1 (requesting an injunction to prevent FAA "from approving the unlawful transfer of the leadership and governance" of the Airport Authority).  Petitioner explained that Tennessee officials had appointed a competing slate of Airport Authority commissioners, to become effective on July 1.  Mot. 9.  Petitioner requested an injunction prior to a scheduled meeting of the new board on July 6.  Mot. 20.

Respondents filed a letter stating that FAA would "not take steps to recognize any [Airport Authority] board prior to July 27" so that this Court could consider the motion for an injunction in the ordinary course.  Resp'ts' Letter to Clerk (July 2, 2026).

## ARGUMENT

To obtain an injunction pending review, petitioner "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Each of these factors weighs against an injunction here.

9

I.    **PETITIONER IS NOT ENTITLED TO THE REQUESTED PRELIMINARY RELIEF BECAUSE IT CANNOT SHOW THAT ADVERSE FAA ACTION HAS OCCURRED OR IS IMMINENT**

Regardless of the merits of the petition for review, the motion for interim relief is fundamentally flawed because it seeks to enjoin action that the agency has not taken and that the agency has not indicated it will take.  As the petition for review acknowledges, FAA has not acted to approve or disapprove a change in governance of the Nashville airports.  *See* Pet. 8-11.  The petition complains that FAA has refused to affirmatively state that it will *not* recognize the state-appointed board. Pet. 1.  But even accepting such allegations, petitioner does not allege any facts to suggest that FAA *will* affirmatively take action with regard to the Airport Authority's governance or that it will specifically act to recognize the state-appointed board, much less that FAA will do so imminently such that petitioner needs emergency relief.

This fundamental flaw warrants denial of petitioner's motion for an injunction.  First, petitioner lacks standing to seek an injunction against FAA based on action that FAA has not taken and has not indicated it intends to take because it cannot establish an imminent, concrete injury.  *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905,

10

913 (D.C. Cir. 2015) ("[A] party who seeks a preliminary injunction 'must show a "substantial likelihood" of standing.'").  To establish standing, petitioner needs to demonstrate, *inter alia*, "injury in fact" that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical," and "a causal connection between the injury and the conduct complained of."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations, footnote, and quotation marks omitted).  Furthermore, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).  Regardless of whether petitioner has standing to challenge FAA's alleged inaction—declining to "state that it will not approve" changes to the Airport Authority's board, Pet. 1—petitioner must independently demonstrate that it has standing to challenge a future, hypothetical action by FAA to affirmatively recognize a new board.  Petitioner's speculation that FAA will take such action presupposes "events that, although by no means impossible, are at this time neither actual nor imminent but wholly conjectural."  *GrassRoots Recycling Network, Inc. v. U.S. EPA*, 429 F.3d 1109, 1112 (D.C. Cir.

11

2005).  "[B]ecause nothing in the record shows" that FAA "has caused or is about to cause [petitioner] an injury in fact," petitioner "does not meet the minimum constitutional requirements" for standing to seek injunctive relief.  *Id.* at 1113; *accord Industrial Energy Consumers of Am. v. FERC*, 125 F.4th 1156, 1161 (D.C. Cir. 2025) ("Allegations of possible future injury do not satisfy the requirements of Art[icle] III." (quotation marks omitted)).

Second, petitioner has not identified any "final agency action" that would be reviewable under the Administrative Procedure Act, 5 U.S.C. § 704; indeed, petitioner has not identified any FAA action at all.  For an agency action to be final, it "must mark the 'consummation' of the agency's decisionmaking process" and it "must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997).  There is no indication that FAA has completed its decisionmaking process as to whether it will weigh in on which board controls the Airport Authority or, if so, which board to recognize, and no rights or obligations have been determined by FAA action that has not yet occurred.  Of course, an agency's failure to act can, in some situations, "constitute[], in effect, an

12

affirmative act that triggers 'final agency action' review." *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001) (quotation marks omitted); *see* 5 U.S.C. § 706(1).  But petitioner's motion for an injunction (unlike the petition for review) does not allege a failure to act, but rather seeks to enjoin FAA from actions that have not yet occurred and for which there is no basis to conclude that FAA has reached a final decision.

Third, petitioner's claim is not ripe for review because it seeks "premature adjudication" of an issue before an "administrative decision has been formalized and its effects felt in a concrete way." *National Park Hospitality Ass'n v. Department of the Interior*, 538 U.S. 803, 807 (2003) (quotation marks omitted).  There is no doubt that there is no "sufficiently final" decision to review here; petitioner would not suffer "an undue burden" by postponing review until FAA makes a decision because petitioner is not presently injured by a hypothetical, future decision; and postponing review until FAA makes a decision would "benefit the [C]ourt" by giving it an administrative record and reasoning to review.  *Village of Bensenville v. FAA*, 376 F.3d 1114, 1120 (D.C. Cir. 2004) (quotation marks omitted).

13

At bottom, petitioner's request for an immediate injunction is improper. As in the ordinary case, petitioner cannot enjoin inchoate agency action. Indeed, petitioner recognizes that if FAA were to approve "any disputed change of airport sponsorship," FAA would need to evaluate whether the relevant statutory framework had been satisfied, what documentation supported that conclusion, and whether any other potential considerations affected the agency's conclusion. Pub. L. No. 118-63, § 757(b)-(c), 138 Stat. at 1286; Pet. 7. Because FAA has made no decision and taken no action, the Court has no agency reasoning to review. Prudence counsels in favor of reasoned decisionmaking and a full record for judicial review, not an emergency injunction.

## II. PETITIONER CANNOT DEMONSTRATE IRREPARABLE HARM WARRANTING RELIEF

A party seeking a preliminary injunction must demonstrate irreparable harm that is "certain and great, actual and not theoretical, and so imminent that there is a clear and present need for equitable relief." *League of Women Voters v. Newby*, 838 F.3d 1, 8 (D.C. Cir. 2016) (alteration and quotation marks omitted). As an initial matter, petitioner cannot demonstrate irreparable harm for the same reason it

14

cannot show a likelihood of success on the merits:  It cannot show certain or imminent injury when there is no evidence that FAA will soon, or ever, recognize the state-appointed board of the Airport Authority.  Because the FAA action that petitioner anticipates is only theoretical at this point, so too is the harm that petitioner expects would follow from such action.  Petitioner cannot "simply show[] some 'possibility of irreparable injury,'" *Nken v. Holder*, 556 U.S. 418, 434-435 (2009); instead, petitioner must show that it "*will be* irreparably harmed absent a stay," *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam) (emphasis added).  Because petitioner cannot show that FAA will imminently reach a determination contrary to its interests, it cannot show that it will be harmed absent a stay.

Moreover, petitioner cannot demonstrate that an injunction of FAA action would prevent its claimed injuries.  Petitioner asserts that Tennessee's "improper attempted takeover of the [Airport Authority] Board of Commissioners, and FAA's refusal to comply with its obligations under Section 757, can only lead to chaos in Nashville as to which entity and personnel speak[] for and bind[] the Airport Board and executives."  Mot. 15.  But this alleged "chaos" is caused, if at all, by the

15

actions of the state-appointed board, not the hypothetical, future action of FAA. And an injunction prohibiting FAA from taking action would not resolve any confusion that has arisen from the actions of competing boards.

Indeed, petitioner's motion asserts that "FAA's *inaction* is causing the State to be able to deprive Petitioner of the Board members it duly selected to carry out the work of the Nashville Airports." Mot. 18 (emphasis added). But petitioner's motion does not seek to remedy FAA's alleged inaction through an order compelling FAA to recognize the Nashville-appointed board, nor could petitioner establish the prerequisites for such an order of mandamus. Rather, petitioner seeks an order prohibiting FAA from recognizing the state-appointed board. Such an order would not resolve the dispute between the two competing boards, however, and thus it would not prevent the "chaos" that petitioner claims is its injury.

To the extent petitioner fears harm from the state-appointed board creating questions about who has authority over the Airport Authority, that alleged harm is better addressed in the pending district-court litigation between petitioner and Tennessee. Indeed, petitioner

16

has already moved for a preliminary injunction against the State in that case, *see supra* p. 7, and neither the district court's delay in acting on that motion nor its deference to this Court by *sua sponte* staying district-court proceedings can justify this Court issuing a preliminary injunction against FAA that would not remedy the asserted harm.

## III    THE BALANCE OF EQUITIES AND PUBLIC INTEREST WEIGH AGAINST AN INJUNCTION

The balance of equities and public interest—which merge where the government is opposing the preliminary injunction, *Nken*, 556 U.S. at 435—also weigh against an injunction pending review.  By prohibiting agency action before it is taken, the proposed injunction would interfere with FAA's prerogative to consider the law and facts and issue a reasoned decision in the first instance.  This intrusion into the ordinary functioning of the Executive Branch would be particularly inappropriate here because Congress has delegated "sole legal authority" to approve any "disputed change of airport sponsorship" to the FAA Administrator.  Pub. L. No. 118-63, § 757(a), 138 Stat. at 1285. An injunction would displace the Administrator's duly-vested authority before FAA has even had a chance to formulate an opinion on the proper course of action.

## CONCLUSION

Petitioner's motion for an injunction pending review should be denied.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

*Of Counsel:*

GREGORY ZERZAN
*General Counsel*

CHARLES E. ENLOE
*Assistant General Counsel*

WILLIAM MCKENNA
*Chief Counsel*

KRYSTYNA BEDNARCZYK
*Assistant Chief Counsel, Federal Aviation Administration*

*Department of Transportation*

DANIEL AGUILAR
STEVEN A. MYERS

/s/ *Joshua M. Koppel*
JOSHUA M. KOPPEL
*Attorneys, Appellate Staff*
*Civil Division, Room 7212*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4820*
*joshua.m.koppel@usdoj.gov*

July 2026

18

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,277 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Joshua M. Koppel*
Joshua M. Koppel