**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE and the METROPOLITAN NASHVILLE AIRPORT AUTHORITY,** | **Case No.: 3:26-cv-00793** |
| **Plaintiffs,** | **Chief Judge Campbell** |
| **v.** | |
| **BILL LEE, in his official capacity as Governor of the State of Tennessee; RANDY McNALLY, in his official capacity as Speaker of the Senate of the State of Tennessee; and CAMERON SEXTON, in his official capacity as Speaker of the House of Representatives of the State of Tennessee,** | |
| **Defendants.** | |

---

**REPLY MEMORANDUM IN SUPPORT OF**
**METRO NASHVILLE'S MOTION TO LIFT STAY**

---

This Court's stay has become self-defeating and serves only to prolong the ultimate resolution of the dispute. As long as this case is pending, the Federal Aviation Administration ("FAA") cannot evaluate or approve the disputed change. *See* FAA Reauthorization Act of 2024, Pub. L. 118-63, § 757(b), 138 Stat. 1025, 1285-87 (2024) ("§ 757"). And the stay compounds the FAA's own delay in acknowledging its § 757 obligations, which is the failure Metro Nashville's pending petition challenges pursuant to 49 U.S.C. § 46110. Because of the statutory sequence § 757 prescribes, staying this case does not advance the D.C. Circuit's work. It delays it.

State Defendants' response urges this Court to maintain this closed loop where this Court's action is deferred pending the D.C. Circuit's review of the FAA, while the FAA evaluation is held in abeyance of this litigation. Such a stay is prejudicial to Metro Nashville and advances neither judicial economy nor the public interest.

## ARGUMENT

The parties agree on the factors courts consider in evaluating a stay based on a related proceeding. (Pls. Mem., at 7; Defs. Resp., at 3.) "In determining whether to stay a case, the Court may consider factors like (1) the potentiality of another case having a *dispositive effect* on the case to be stayed, (2) the judicial economy to be saved by waiting on a *dispositive decision*, (3) public welfare, and (4) the hardship/prejudice to the party opposing the stay." *Costello v. Mountain Laurel Assurance Co.,* No. 2:22-CV-35-TAV-CRW, 2024 WL 4115979, at *2 (E.D. Tenn. Sept. 5, 2024) (emphasis added). Here, all four factors weigh against maintaining the stay.

### I. State Defendants make no claim the D.C. Circuit will be dispositive to this action.

While State Defendants correctly frame the question as whether another proceeding may have a dispositive effect, their opposition establishes only an "overlap of issues." (Defs. Resp., at 3–4.) To establish this "overlap," they quote Metro Nashville's arguments about what the FAA

must do to comply with Section 757, rather than identifying any question the D.C. Circuit would answer that would resolve this action. *Id.* That Metro Nashville has pressed the FAA to comply with its Section 757 approval obligations says nothing about whether State Defendants may implement a disputed change without the approval Section 757 requires. The 2026 Act is not before the D.C. Circuit. Neither are State Officer Defendants.

However the D.C. Circuit rules, the result here is the same. If Metro Nashville prevails in the D.C. Circuit, there is no FAA approval—and this Court must decide whether State Defendants may implement the change without one. If the FAA prevails and owes no further pre-decision obligations, there is still no approval, and the same question remains. If the petition is dismissed for want of a reviewable order—the ground the FAA presses—there is again, no approval, and the question stands exactly where it stands today. No disposition supplies approval, the absence of which is the premise of this case, and none reaches the State's authority to act without it. The FAA said as much, arguing that an order against it "would not resolve the dispute between the two competing boards." (Mem. in Supp. Mot. to Lift Stay, Ex. 1, at 16.) A stay cannot rest on a proceeding that both the petitioner and respondent agree will not resolve the deferred dispute.[1]

Nor does the premise on which the stay was issued still hold. Any possibility that the D.C. Circuit would sustain an FAA approval of the State-appointed board and moot this action was foreclosed by the FAA's own filing. The FAA represented that it "has made no decision and taken no action," and that it "has neither taken a position on the governance of the Airport Authority nor acted." (Mem. in Supp. Mot. to Lift Stay, Ex. 1, at 8, 14.) The State's argument that these

[1] *See Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1525 (11th Cir. 1984) (stay unwarranted where related proceeding cannot resolve the stayed case). For its part, the State's position in the D.C. Circuit is that the petition should be dismissed without addressing the merits, arguing that the "premature petition must be dismissed" and that the D.C. Circuit "cannot afford Metro the relief requested." (Mem. in Supp. Mot. to Lift Stay, Ex. 5, at 20.)

statements are out of context because the FAA "explicitly declined to opine on the merits" is a non sequitur. (Defs. Resp., at 4–5.) Declining to opine on the merits is not a retraction of the agency's representations about what it has and has not done. Those are facts about the agency's own conduct, and Section 757(b)(2) fixes that non-approval for as long as this litigation is pending.

## II. The stay necessarily prolongs the resolution of D.C. Circuit proceedings.

Section 757 bars the FAA from evaluating or approving a disputed change while litigation between the parties is pending, and it sets the order in which that dispute is resolved. First, the dispute must end in settlement, consent, or a final unreviewable decision. § 757(b). Only then may the FAA conduct the independent evaluation Section 757 requires, and approve, disapprove, or impose any necessary terms or conditions the disputed change warrants. § 757(c).

The stay here stops that sequence at step one. It does not merely delay this case; it prevents the statutory process from beginning at all. And it cannot be justified by the prospect that the D.C. Circuit can resolve the dispute in its entirety. No disposition by the D.C. Circuit concerning the FAA's *pre-decision* obligations can also address the objections that may be raised by the State or by Metro Nashville following the FAA's ultimate decision on approval.

The FAA's approval decision cannot be made while this Court's stay is in place. The FAA's non-approval is not a litigation posture that further time will resolve; it is the condition Section 757(b)(2) imposes for as long as this case is pending. A stay awaiting that proceeding therefore blocks the FAA from making the decision the stay awaits. This Catch-22 serves only State Defendants' interest in maintaining *de facto* governance without the FAA approval required by law. A stay is "immoderate and hence unlawful unless . . . its force will be spent within reasonable limits." *Landis v. N. Am. Co.,* 299 U.S. 248, 257 (1936). No such limit exists here, because the stay's force cannot be spent until the process it suspends can proceed.

## III. The public welfare is not served by a stay permitting an unapproved board to act.

State Defendants also invoke recent transactions with the FAA to argue the public benefits from continued delay. But their own evidence refutes that reliance. They represent that the FAA is now "working closely (and in harmony) with the current MNAA board," resting that claim primarily on three FAA grant offers transmitted and accepted on July 27, 2026. (*See id.* at 5; Kreulen Decl. ¶¶ 4–6.) But the State-appointed board authorized none of them. Under MNAA's by-laws, board approval is required for agreements contemplating payment by or to MNAA exceeding $500,000. (Dkt. #21-2.) The locally-appointed Board authorized the CEO to accept FAA grants *before* the 2026 Act took effect. (Reply Ex. A, MNAA Board Packet at 36, 45 (Apr. 15, 2026).) Asked at that meeting whether approval to accept grants was always required, Mr. Kreulen responded that the resolutions were "giving me permission to sign an agreement related to the special projects." (Reply Ex. B, MNAA Minutes, at 12 (Apr. 15, 2026).)

For a lease executed on July 29, 2026, Mr. Kreulen's declaration does note the State-appointed board's authorization—a representation notably absent from his statements pertaining to the FAA grants. Kreulen Decl. ¶¶ 4–7. Far from demonstrating the FAA working in harmony with a single board, these facts demonstrate an Authority executing federal instruments within a fortnight under authority conferred by two different boards. In any event, whether a body may assume the obligations of an airport sponsor is the question Section 757 commits to the FAA *after* the resolution of all pending litigation, not before.

## IV. State Defendants apply an improper measure of prejudice.

The State suggests that Metro Nashville suffers no prejudice because no flights are delayed, no maintenance is forgone, and no contracts have been terminated. (Defs. Resp., at 6). That is not the injury at issue—or the prejudice caused by maintaining the stay. The injury is the deprivation

of Plaintiffs' entitlement under Section 757 to have a disputed change of sponsorship held in abeyance until the statute's conditions are satisfied. And that deprivation compounds with time: every contract executed, every grant dollar committed, and every lease entered on the authority of the unapproved board creates obligations a later injunction cannot unwind.

The evidence State Defendants proffer—the State-appointed board's authorization of leases and its expenditure of federal funds—confirms that the prejudice to Metro Nashville's interest is real and growing with each meeting of the State-appointed board. *See* Kreulen Decl. ¶¶ 4–7; Notice of Filing, Dkt. # 43 (board records documenting expenditures of federal funds). As the airport's federal standing is compromised by the acts of a board the FAA has, by its own representations, not approved, that loss falls on the Authority and the community that built it, not on the State Defendants.

Section 757 is a status quo statute. It commands that a disputed change not take effect without FAA approval, and that evaluation cannot commence during pending litigation. Here, the preservation of the *status quo ante* is the remedy. A stay does not protect the Court's ability to grant relief later but withholds statutory protection now. "[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis,* 299 U.S. at 255.

## CONCLUSION

For the reasons above and in the motion and principal brief, Metro Nashville respectfully requests that the Court lift the stay entered July 8, 2026, and grant the motion for preliminary injunction; or, in the alternative, lift the stay and rule on that motion; or lift the stay and reset the hearing. No party opposes Metro Nashville's request that any responses to motions filed July 6, 2026, be due within twelve days after an order lifting the stay, and that request should be granted.

Respectfully submitted,

DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
TYLER CHANCE YARBRO (#023553)
DIRECTOR OF LAW

*/s/ Tyler Chance Yarbro*
Metropolitan Courthouse, Suite 108
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341
tyler.yarbro@nashville.gov

*/s/ Robert E. Cooper, Jr.*
BASS, BERRY & SIMS, PLC
ROBERT E. COOPER, JR. (#010934)
JEFFREY P. YARBRO (#024207)
WESLEY S. LOVE (#036860)
21 Platform Way South, Suite 3500
Nashville, Tennessee 37203
(615) 742-6200
bob.cooper@bassberry.com
jyarbro@bassberry.com
wesley.love@bassberry.com

*Counsel for Metro Nashville*

## CERTIFICATE OF SERVICE

I certify that on August 21, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, which includes:

Phillip F. Cramer
W. Campbell Haynes
SPERLING KENNY NACHWALTER LLC
1221 Broadway, Suite 2140
Nashville, Tennessee 37203
pcramer@sperlingkenny.com
chaynes@sperlingkenny.com

*Counsel of Record for MNAA*

Tyler S. Sanders
Laurel K. Hall
Office of the Tennessee Attorney General
Financial Division
P.O. Box 20207
Nashville, TN 37202
tyler.sanders@ag.tn.gov
laurel.hall@ag.tn.gov

*Counsel for State Officer Defendants*

George H. Cate III
James L. Murphy III
Timothy A. Rodriguez
Bradley Arant Boult Cummings, LLP
1221 Broadway, Suite 2400
Nashville, TN 37203
gcate@bradley.com
jmurphy@bradley.com
trodriguez@bradley.com

*Counsel for Movants in Motion to Substitute*

*/s/ Robert E. Cooper, Jr.*